UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEATRICE WINSTON,

        Plaintiff,

v.                              Case No. 8:23-cv-1865-WFJ-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 10, 317, 324). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 167, 172, 187). Plaintiff then requested

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

an administrative hearing (Tr. 193–94). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 40–59, 60–90, 91–108). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 23). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1983, claimed disability beginning November 30, 2018 (Tr. 317). Plaintiff obtained a limited education (Tr. 84–85, 115). Plaintiff's past relevant work experience included work as a cosmetologist (Tr. 20, 84–85). Plaintiff alleged disability due to fibromyalgia (Tr. 142).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since November 30, 2018, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, asthma, and migraines (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (Tr. 16). The ALJ then concluded that Plaintiff retained a

residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> she can occasionally climb ramps and stairs, rarely climb ladders, and
> never climb ropes or scaffolds. She can frequently balance and
> occasionally stoop, kneel, crouch, and crawl. She would need to avoid
> concentrated exposure to loud noise or flashing lights in the immediate
> work area. She needs to avoid concentrated exposure to dusts, odors,
> fumes, or pulmonary irritants.

(Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective

complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce the

symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

effects of her symptoms were not entirely consistent with the medical evidence and

other evidence (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational

expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work

(Tr. 20–21). The ALJ further determined that in addition to past relevant work,

there are other jobs that exist in significant numbers in the national economy that

the claimant also can perform, considering the claimant's age, education, work

experience, and residual functional capacity (Tr. 21). Given Plaintiff's background

and RFC, the VE testified that Plaintiff could perform other jobs existing in

significant numbers in the national economy, such as a

> Collator, operator (DOT 208.685-010) which could be performed at
> the light unskilled exertional level with an SVP of two of which there
> are 46,100 jobs nationally; and Advertising material distributor (DOT
> 230.687-010) which could be performed at the light unskilled

3

exertional level with an SVP of two of which there are 33,800 jobs nationally.

(Tr. 22). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 22).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20

4

C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to consider the combination of all of Plaintiff's impairments, both severe and non-severe; (2) failing to properly evaluate Plaintiff's mental RFC; and (3) failing to properly evaluate medical opinion evidence. At the outset, this Court notes that filings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Rodgers v. Comm'r of Soc. Sec.*, No. 3:23-CV-290-JBT, 2023 WL 5769319, at *1 (M.D. Fla. Sept. 7, 2023) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)). Even given that, for the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Whether the ALJ properly considered Plaintiff's combination of impairments, severe and non-severe in the RFC assessment

Plaintiff argues that the ALJ did not consider the combination of all her impairments, both severe and non-severe. In support, Plaintiff cites to several Exhibits (B1E, B7F, B11F, B15F) in the transcript concerning her fibromyalgia, post-traumatic stress disorder, and major depressive disorder (Tr. 748–56, 930–43, 990, 1002). Exhibit B15F details Plaintiff's patient summary with Dr. Adam Munk, her mental health care provider (Tr. 990–1014). Plaintiff notes from Exhibit B15F a list of diagnoses, including major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Tr. 990). Exhibit B11F shows Plaintiff's physical/occupational therapy progress evaluation as it relates to her fibromyalgia

and back pain (Tr. 932–43). Plaintiff highlights from Exhibit B11F that the Oswestry score is labeled "totally disabled" (Tr. 934–35, 942). Exhibit B1E is a letter dated July 3, 2008, from Plaintiff's previous rheumatologist describing the effects of Plaintiff's fibromyalgia (Tr. 432). Lastly, with regard to the first argument before this Court, Plaintiff cites to Exhibit B7F, which are patient educational materials included in Plaintiff's discharge information from Sharp Chula Vista Medical Center (Tr. 748–56). The materials describe myofascial pain syndrome and fibromyalgia, Plaintiff's take home medication instructions, and other relevant treatment information (Tr. 748–56).

Here, the ALJ stated that he considered all of Plaintiff's "medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity" (Tr. 15). In reviewing her "medically determinable mental impairments of anxiety disorder, mood disorder with depressive and bipolar traits, and PTSD," the ALJ found those impairments, singly and in combination, did not cause more than minimal limitations on Plaintiff's ability to perform basic mental work activities and thus, were "non-severe" (Tr. 14). In evaluating Plaintiff's mental RFC, the ALJ considered the four broad functional areas of mental functioning as set out in the regulations and concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not other indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities" (Tr. 14–15). The ALJ found Dr. Munk's opinion mostly persuasive with regard to Plaintiff's

mental RFC determination (Tr. 15). Dr. Munk opined that Plaintiff "has no more than mild limitations in following one or two step oral instructions, using reason and judgment to make work related decisions, understanding and responding socially, working at an appropriate and consistent pace, sustaining an ordinary routine and regular attendance, and maintaining personal hygiene and attire appropriate to the work setting" (Tr. 15). The ALJ was fully persuaded by this opinion and noted it was consistent with (1) Dr. Munk's examination where Plaintiff generally sustained an unremarkable mental presentation and (2) Plaintiff's testimony regarding her ability to move to various locations, care for children, and maintain her home when needed[2] (Tr. 15). The ALJ was only somewhat persuaded by Dr. Munk's findings on Plaintiff's time off task and absenteeism, noting that they were speculative and imprecise compared to Dr. Munk's other findings and Plaintiff's testimony (Tr. 15).

Plaintiff limits her argument to the ALJ's consideration of her impairments, both severe and non-severe. While the ALJ did not need to determine whether every alleged impairment was "severe," he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x

---

[2] Plaintiff noted in her Reply that the ALJ misrepresented her ability to move to different locations, care for her children, and maintain her home. Plaintiff states that she did not do any of those events alone, and therefore, reconsideration of her RFC is proper based on that additional fact. As stated later in this Report and Recommendation, this new argument raised in her Reply was not properly briefed before this Court. Accordingly, this cursory argument raised in Plaintiff's Reply has been waived.

949, 951 (11th Cir. 2014). Despite Plaintiff's arguments to the contrary, it is apparent from the face of the ALJ's decision and Dr. Munk's report relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in combination to conclude that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not other indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities" (Tr. 14–15); *see Tuggerson-Brown*, 572 F. App'x at 951–52 (where the ALJ stated that he evaluated whether the plaintiff had an impairment or combination of impairments that met a listing and that he considered all symptoms in determining the RFC, such statements were enough to demonstrate that the ALJ considered all the necessary evidence). The ALJ's reliance on Dr. Munk's opinion when considering Plaintiff's severe and non-severe impairments is supported by substantial evidence.

Moreover, Plaintiff's references to her back pain and fibromyalgia diagnoses alone do not refute the ALJ's adequate consideration of her impairments. In citing to the Exhibits containing her diagnoses, Plaintiff does not explain how those conditions caused disabling limitations beyond what the ALJ assessed. Even still, the ALJ properly considered Plaintiff's back pain and fibromyalgia diagnoses. The ALJ recognized Plaintiff's reports of her fibromyalgia interfering with her work and daily living (Tr. 17). Specifically, the ALJ recounted that Plaintiff complained of fatigue and all over body pain in her joints, toes, fingers, hands, ankle, wrists, neck, back, knees, and legs (Tr. 17). However, the ALJ determined that Plaintiff's

subjective complaints related to her fibromyalgia were not well-substantiated by her treatment records (Tr. 18). The ALJ reasoned that Plaintiff's treatment records showed her symptoms had proven "stable" with relatively little corrective treatment and have allowed her to engage in numerous activities, including working less than full-time as a cosmetologist on an ongoing basis (Tr. 18). In fact, the ALJ highlighted that while Plaintiff alleged disability, her earnings records show continued work through 2021 (Tr. 18, 392). In recognizing Plaintiff's subjective complaints, the ALJ cited Plaintiff's physical examinations that showed some tenderness in the spine and reports of pain (Tr. 19). But the ALJ weighed such reports with Plaintiff's conservative treatment for her symptoms, which included Acetaminophen or metoclopramide, yoga, meditation, biofeedback therapy, visual imagery therapy, hypnosis, muscle relaxation, over the counter medications, and aquatic physical therapy (Tr. 18–19, 674, 716, 719–20, 750–51, 756); *see Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863–64 (11th Cir. 2017) (finding that a conservative treatment regimen for a plaintiff's mental and physical impairments supported the ALJ's finding that the claimant's subjective complaints were inconsistent with the medical evidence). Given this, the ALJ extensively considered and analyzed Plaintiff's back pain and fibromyalgia diagnoses. Accordingly, the ALJ's decision regarding Plaintiff's combination of impairments is supported by substantial evidence.

**B. Whether the ALJ proper considered the diagnoses and medical opinions in assessing Plaintiff's mental RFC**

Plaintiff next argues that the ALJ did not properly evaluate her RFC. Specifically, Plaintiff contends that the ALJ did not list her PTSD diagnosis as a severe mental impairment. Plaintiff cites to Dr. Munk's Treating Source Statement of Mental Limitations, where he identified Plaintiff's diagnoses as severe episode of recurrent major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Tr. 1023–24).

At step two of the sequential analysis, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (per curiam). At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a), 416.920(a)(4)(ii), 416.921, 416.922(a). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from

purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (per curiam) (citations omitted); 20 C.F.R. §§ 404.1521, 416.921.

Notably, however, the finding of *any* severe impairment, whether it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (per curiam) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied."); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, asthma, and migraines (Tr. 14). Further, contrary to Plaintiff's assertion, the ALJ did acknowledge Plaintiff's diagnoses in the record. The ALJ found that Plaintiff's medically determinable mental impairments of anxiety disorder, mood disorder

with depressive and bipolar traits, and PTSD do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore non-severe (Tr. 14).

Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853–54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824–25.

### C. Whether the ALJ properly assessed the persuasiveness of Dr. Munk's opinion in finding it mostly persuasive

Lastly, Plaintiff contends that the ALJ improperly evaluated the medical opinion evidence. Plaintiff argues that the ALJ did not appropriately assess Dr. Munk's opinion regarding specific workplace limitations. Specifically, Plaintiff relies on Dr. Munk's statement associated with his opinion about Plaintiff's functional limitation. Alongside his findings that Plaintiff had mild limitations in all of the mental functioning categories, Dr. Munk wrote "all of these depend too much on how she is doing in the moment. Levels of depression and anxiety ebb and flow and trauma can be triggered" (Tr. 1023).

When assessing the medical evidence, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long

as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). Previously, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017, are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). The new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). Because Plaintiff submitted her application for benefits on January 21, 2020 (Tr. 317, 324), the new regulation applies.

Under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. § 404.1520c(c)(1) through (c)(5), as appropriate. 20 C.F.R. § 404.1520c(a), (b)(1). These factors are as follows: whether an opinion is well-supported; whether an opinion is consistent with the record; the treatment relationship between the medical source and the

claimant; the area of the medical source's specialization; and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)–(v), (c)(5).

Here, Plaintiff argues that the ALJ did not factor in Dr. Munk's qualifying statement regarding Plaintiff's level of function limitations. As stated in Section A above, the ALJ found Dr. Munk's opinion mostly persuasive with regard to Plaintiff's mental RFC determination (Tr. 15). Dr. Munk opined that Plaintiff "has no more than mild limitations in following one or two step oral instructions, using

reason and judgment to make work related decisions, understanding and responding socially, working at an appropriate and consistent pace, sustaining an ordinary routine and regular attendance, and maintaining personal hygiene and attire appropriate to the work setting" (Tr. 15). As Plaintiff stated, Dr. Munk noted alongside the mild limitation findings that "all of these depend too much on how she is doing in the moment. Levels of depression and anxiety ebb and flow and trauma can be triggered" (Tr. 1023). Still, the ALJ was fully persuaded by this opinion and noted it was consistent with Dr. Munk's examination where Plaintiff generally sustained an unremarkable mental presentation and with Plaintiff's testimony regarding her ability to move to various locations, care for children, and maintain her home when needed (Tr. 15). The ALJ was only somewhat persuaded by Dr. Munk's findings on Plaintiff's time off task and absenteeism, noting that they were speculative and imprecise compared to Dr. Munk's other findings and Plaintiff's testimony (Tr. 15).

Upon review of the ALJ's decision and the evidence of record in this instance, this Court is satisfied that the ALJ fully and properly considered the medical evidence in conjunction with the other evidence describing Plaintiff's subjective complaints regarding her mental impairments. *See Simon v. Comm'r Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021) (discussing the unpredictable fluctuation of symptoms, including good days and bad days, for individuals with mental disorders and the impropriety of an ALJ's dismissal of a mental health professional's treatment notes as indicating only mild limitations because some of

the mental status examinations are better than others). Based on the ALJ's extensive analysis of Dr. Munk's opinion, the ALJ's decision as to proper consideration of the medical opinion evidence is supported by substantial evidence.

Finally, this Court notes that Plaintiff raises at least three new arguments in her Reply that were not initially briefed. Plaintiff argues in her Reply that the ALJ made several misleading statements in the opinion, the ALJ's opinion was based on hypotheticals from the VE and not on facts, and that this Court should find that the evidence supports greater limitations than determined by the ALJ. Under Eleventh Circuit precedent, a party abandons an issue by raising it for the first time in her Reply brief. *Douglas v. Comm'r Soc. Sec. Admin.*, 832 F. App'x 650, 655 (11th Cir. 2020). Accordingly, it is improper for this Court to evaluate the merits of such claims in Plaintiff's Reply. However, even if Plaintiff had initially raised these arguments, she does not provide any case law to substantiate her claims. *Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 n.3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."); *Martin v. Kijakazi*, No. 8:22-CV-1813-AEP, 2023 WL 5030801, at *5 (M.D. Fla. Aug. 8, 2023). Further, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Winschel v. Comm'r of Soc.*

*Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Thus, Plaintiff's arguments in her Reply brief are misplaced.

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be affirmed.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 6th day of June, 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:   Hon. William F. Jung
      Counsel of Record